```
                    IN THE UNITED STATES DISTRICT COURT

                         FOR THE DISTRICT OF OREGON

JOHNNEY AL OSBORNE, JR.,                              CV. 05-641-HA

               Plaintiff,             OPINION AND ORDER

       v.

SUPERINTENDENT JEAN HILL, MR.
BRABB, MR. CAIN, MR. FOLEY, MS.
HICKS,  MR.  MILHORN,  MR.
OSCARSON, MR. PETERS and MS.
STEVENS,

               Defendants.
```

HAGGERTY, District Judge.

This 42 U.S.C. § 1983 civil rights action comes before the court on plaintiff's Motion for Default Judgment [72] and defendants' Motion to Dismiss [58], Motion for Summary Judgment [75], and Motion to Submit In Camera Attachments [78]. The Motion to Submit In Camera Attachments is granted as the exhibits are necessary to the disposition of the pending Motion for Summary Judgment.

///

1 - OPINION AND ORDER

## I.   **Plaintiff's Motion for Default Judgment [72].**

Plaintiff asks the court to enter a default judgment against defendants because defendants did not timely respond to a discovery request, and because the Oregon Department of Corrections ("ODOC") has not formally appeared despite plaintiff's attempt to add ODOC as a party through a document entitled "joinder/addendum."[1]

Fed. R. Civ. P. 37 permits the district court, in its discretion, to enter a default judgment against a party who fails to comply with an order compelling discovery. Fed.R.Civ.P. 37(b)(2)©; Computer Task Group, Inc. v. Brotby, 364 F.3d 1112, 1114 (9th Cir. 2004). As plaintiff has not asked this court to issue an order compelling discovery, default judgment for failure to provide discoverable material is not warranted.

Although plaintiff also seeks default judgment against ODOC, ODOC is not a valid defendant to this lawsuit because it is not a named party in the Amended Complaint. Even if plaintiff had properly named ODOC as a defendant to this lawsuit, it would be entitled to Eleventh Amendment immunity because it functions as an arm of the State. See Savage v. Glendale Union High School, 343 F.3d 1036, 1040 (9th Cir. 2003). The Motion for Default Judgment is therefore denied.

---

[1] Although plaintiff also argues the merits of his case in his Motion for Default Judgment, it would not be appropriate for the court to enter default judgment against defendants based on the merits of the case.

2 - OPINION AND ORDER

**II.  Motion to Dismiss [58].**

The court previously determined that on June 29, 2005, plaintiff filed his Amended Complaint raising the following claims:

1.  Defendants wrongfully confiscated and destroyed plaintiff's personal and religious belongings, and prevented him from completing several courses of religious study, in violation of plaintiff's First, Fifth, Sixth, and Fourteenth Amendment rights;

2.  Plaintiff has been denied literary material of a sexual nature and Uniform Commercial Code material through defendants' use of an unconstitutional administrative rule governing prisoners' receipt of mail that is overbroad in violation of plaintiff's First, Fifth, Eighth, Ninth, and Fourteenth Amendments, as well as various federal statutory rights.

3.  Plaintiff has been denied safe and secure housing at the Oregon State Penitentiary in violation of his Second, Fifth, Eighth, Ninth, and Fourteenth Amendment rights.

Defendants ask the court to dismiss plaintiff's first claim for failure to exhaust his available administrative remedies.

**A.    Standards.**

The Prison Litigation Reform Act of 1995 amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory, even when the prisoner seeks relief not available in grievance proceedings.  Porter v. Nussle, 534 U.S. 516, 524 (2002).

3 - OPINION AND ORDER

The failure of a plaintiff to exhaust his administrative remedies is an affirmative defense which defendants must raise and prove. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir.), cert. denied, 124 S.Ct. 50 (2003). Because the nonexhaustion defense does not address the merits of the case, it is properly raised in an unenumerated Rule 12(b) motion rather than in a motion for summary judgment. Id. When deciding a motion to dismiss for failure to exhaust administrative remedies, the court may look beyond the pleadings and decide disputed issues of fact. Id at 1119-1120. If the court concludes that the prisoner has not exhausted his administrative remedies, the proper remedy is dismissal without prejudice. Id at 1120.

B. **Discussion.**

The Oregon Department of Corrections utilizes a three-step administrative review process. For non-emergency grievances, an inmate is required to file a grievance form within 30 working days of the incident. OAR 291-109-0140(3). If an inmate is unable to obtain relief through his initial grievance, he may appeal the result of his initial grievance to the functional unit manager within fourteen days. OAR 291-109-0140(4). If the inmate does not succeed in his appeal to the functional unit manager, he may ask for additional review by the Assistant Director. Id. Alternatively, an inmate may pursue administrative remedies through

4 - OPINION AND ORDER

a separate process specifically reserved for issues pertaining discrimination. See OAR 291-006-0005, et seq.

In this case, plaintiff filed a first-level grievance on April 16, 2004 alleging that he had been denied the use of a calculator for his religious studies. Affidavit of Teresa Hicks, p. 4, Attachment No. 2. Plaintiff received a response advising him to consider the calculators approved for sale through the institutional canteen. Id, p. 4. Plaintiff did not seek appellate review of this decision from the functional unit manager or the Assistant Director.

Plaintiff filed another first-level grievance on April 16, 2004, this time utilizing ODOC's grievance process reserved for discrimination claims. He raised issues pertaining to the denial of a calculator, the withholding of religious correspondence course materials, and the desecration and loss of his religious property. Id, Attachment No. 3. Plaintiff received a response which addressed only the issue involving correspondence course materials. Id, Attachment No. 6. Again, plaintiff did not seek appellate review of this decision from the functional unit manager or the Assistant Director.

Because plaintiff has not attempted to complete the administrative review process made available to him at his institution, defendants' Motion to Dismiss is granted, and

5 - OPINION AND ORDER

plaintiff's first ground for relief is dismissed, without prejudice.

### III. Motion for Summary Judgment [72].

Defendants next move for summary judgment on Claims Two and Three. A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion, and "identifying those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citation omitted).

"If the moving party meets its initial burden of showing 'the absence of a material and triable issue of fact,' 'the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense.'" Intel Corp. v. Hartford Acc. & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991) (quoting Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987)). Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). Rather, he must come forward with sufficient evidence demonstrating

6 - OPINION AND ORDER

to the court that there are genuine issues of material fact to be decided at trial. Fed. R. Civ. P. 56(e).

Plaintiff may not simply rely upon the pleadings to designate specific facts establishing a genuine issue for trial. Celotex Corp., 477 U.S. at 324. The existence of a genuine issue of material fact may be demonstrated through the use of affidavits, depositions, answers to interrogatories, and admissions. Id; see also Fed. R. Civ. P. 56(c). If "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita, 475 U.S. at 587 (internal citation omitted).

    A.    **Qualified Immunity: Legal Standard**.

In their Motion for Summary Judgment, defendants assert the defense of qualified immunity, which protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). This rule "'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.'" Burns v. Reed, 500 U.S. 478, 494-95 (1991) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

The entitlement to qualified immunity "is an immunity from suit rather than a mere defense to liability; . . . it is effectively lost if a case is erroneously permitted to go to

7 - OPINION AND ORDER

trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). As such, "a defendant is entitled to a ruling on qualified immunity 'early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive.'" Jeffers v. Gomez, 267 F.3d 895, 909 (9th Cir. 2001) (quoting Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 2156 (2001)).

The required first step in a qualified immunity analysis "is to consider the materials submitted in support of, and in opposition to, summary judgment, in order to decide whether a constitutional right would be violated if all facts are viewed in favor of the party opposing summary judgment." Jeffers, 267 F.3d at 909 (citing Saucier, 121 S.Ct. at 2156). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Saucier, 121 S.Ct. at 2156.

If a constitutional violation could be made out on a favorable view of the submissions before the court, "the next, sequential step is to ask whether the right was clearly established." Id. "This inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Id. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a

reasonable officer that his conduct was unlawful in the situation he confronted." Id. (citing Wilson v. Layne, 526 U.S. 603, 615 (1999)).

Finally, if the law governing the state official's conduct was clearly established, the court must inquire whether "a reasonable state official [could] have believed his conduct was lawful[.]" Jeffers, 267 F.3d at 910 (citing Browning v. Vernon, 44 F.3d 818, 822 (9th Cir. 1995) (citing Act Up!/Portland v. Bagley, 988 F.2d 868, 871-72 (9th Cir. 1993)). "Although a defendant's subjective intent is not relevant to the qualified immunity defense, his mental state is relevant where it is an element of the alleged constitutional violation." Jeffers, 267 F.3d at 911 (citing Crawford-El v. Britton, 523 U.S. 574, 589 & n. 11 (1998)).

**B.    Claim Two: Denial of Sexually Explicit and UCC Material.**

As plaintiff's second claim, he first alleges that prison officials unlawfully banned certain sexually explicit mail which he both sought to send and receive. Specifically, plaintiff was precluded from sending erotic writings which he authored, and prohibited from receiving an issue of "Priaprism Press, Last Gasp Erotica Catalog." In order to defeat defendants' Motion for Summary Judgment, plaintiff must show that the regulations he challenges are not reasonably related to legitimate penological interests, or that there is a genuine issue of material fact regarding the applicability of the regulations to the banned

materials. Bahrampour v. Lampert, 356 F.3d 969, 973 (9th Cir. 2004).

When defendants banned the sexually explicit materials at issue in this case, they relied on OAR 291-131-0035(1). OAR 291-131-0035(1) constitutes a general ban on sexually explicit materials in Oregon's prisons, and the Ninth Circuit has clearly held that the regulation is rationally related to a legitimate penological interest. Id at 976.

OAR-291-131-0035(1)(e) does, however, contain an exception for materials with scholarly or literary value. Plaintiff argues that the confiscated sexually explicit materials had literary value, therefore confiscation was not appropriate. The court has conducted an in camera review of the materials at issue and finds that no rational trier of fact could determine that the materials fall outside the scope of OAR 291-131-0035(1), nor could a rational trier of fact conclude that the materials have scholarly or literary value sufficient to exempt them from OAR 291-131-0035(1).

Plaintiff has also alleged that defendants improperly denied him access to the Uniform Commercial Code which he "needed to have to show [he] had a superior claim in litigation of [his] possible release and monetary settlement. . . ." Amended Complaint [10], p. 6. As plaintiff notes in his affidavit supporting his response to the Motion for Summary Judgment, defendants have not addressed this access to courts claim.

10 - OPINION AND ORDER

There is nothing in the Uniform Commercial Code which would help plaintiff challenge the legality of his conviction or the conditions of his confinement. Accordingly, plaintiff is unable to state a valid access to courts claim. See Lewis v. Casey, 518 U.S. 343, 350, 355 (1996) (an inmate is only entitled to access to items which will assist him in challenging the legality of his conviction or sentence, or the conditions of his confinement). As plaintiff cannot prove the violation of a constitutional right, defendants are entitled to summary judgment on Claim Two. See Saucier, 121 S.Ct. at 2156.

    C.    **Claim Three: Failure to Protect.**

On November 3, 2003, plaintiff became involved in an argument with another inmate ("Prock") which ultimately led to a physical confrontation. As a result, plaintiff alleges that defendants have failed to provide him with safe and secure housing in violation of the Constitution. The court construes Claim Three as one alleging a failure to protect on the part of defendants in violation of the Eighth Amendment.

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (internal citation omitted). The failure to protect inmates from attacks by other inmates may violate the Eighth Amendment when (1) the deprivation alleged is "objectively, sufficiently serious" and (2) the prison officials had a

11 - OPINION AND ORDER

"sufficiently culpable state of mind," acting with deliberate indifference.  <u>Id</u> at 834.

"[D]eliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  <u>Id</u> at 835.  Only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.  <u>Wilson v. Seiter</u>, 501 U.S. 294, 297 (1991).

The incident at issue was memorialized by defendant Foley in a misconduct report which reads as follows:

> On [November 3, 2003], I was assigned to Complex 2, Unit A as the unit officer.  At the 2:50 p.m. line movement, I was just closing the doors for the beginning of line movement when I noticed Inmate[] Osborne . . . and Inmate Prock . . . in a little bit of a verbal argument standing by the drinking fountain.  I turned away for a moment wand when I looked back at the inmates, I saw Inmate Osborne strike [I]nmate Prock in the chest with both hands.  I heard Inmate Prock hit the TV room door with some force and then I called both their names and ordered them to stop and they complied.  The mail that I had just given Osborne was on the floor along with mail that also belonged to Inmate Prock.  I immediately called for Sgt. Benitez and escorts, I then told everyone to sit down and told both Osborne and Prock to exit the unit.  Once out in the hall way inmate Osborne told me he was just pushing inmate Prock away because he was bugging him about the mail he just got.  This happened in a full dayroom; the Inmates attention was focused on the officer station where I was handing out mail.

Affidavit of Wade Scrogham, Attachment 1.

As a result of this incident, disciplinary charges were brought against both inmates and a formal hearing was held.  After Hearings Officer Powell read Foley's report into the record, inmate Prock testified that "pretty much what's written is what happened."

12 - OPINION AND ORDER

Id, Attachment 2, p. 6. According to Prock, he asked plaintiff what he was reading, prompting plaintiff to throw his magazine down, ask Prock if he had a problem, and push Prock up against a door. Id. At this point, defendant Foley ended the confrontation.

Plaintiff was also given the opportunity to testify during the disciplinary hearing. He confirmed that Prock asked him about his reading material, but also testified that Prock lifted the cover on the magazine, causing it to drop to the ground, which resulted in a verbal argument. Id at 7. Plaintiff admitted to pushing Prock with one hand in an attempt to pick up his magazine. Id at 8. After hearing the testimony, the Hearings Officer concluded that plaintiff's actions constituted "a unilateral attack Mr. Prock did not actively engage in . . . in any way." Id at 9.

Plaintiff has filed an affidavit with the court in which he attests that his argument with Prock lasted anywhere between three to five minutes before he pushed Prock. Affidavit of Johnny Osborne, pp. 2-4. According to plaintiff, he struck Prock in self defense after being "left . . . in an altercation for five minutes where [he] was pushed, hit, shouldered, etc. . . ." Id at 2.

Plaintiff's sworn statement that he was physically assaulted is inconsistent with the allegations in his Amended Complaint, his testimony at the disciplinary hearing, and all of the other evidence in the record. In short, plaintiff has provided no substantiating evidence to support his affidavit's conclusory

13 - OPINION AND ORDER

allegation that he was "pushed, hit, shouldered, etc." Consequently, this allegation, by itself, is not sufficient to overcome defendants' Motion for Summary Judgment. See Lujan v. National Wildlife Federation, 497 U.S. 871, 888 (1990) (conclusory allegations in an affidavit insufficient to defeat summary judgment motion).[2]

The record, taken as a whole, shows that plaintiff was the aggressor in this case, not the victim, and a jury could not conclude otherwise from the evidence before the court. At most, the evidence in this case could support that plaintiff argued with Prock for five minutes before striking him, at which time Foley stepped in to stop the altercation.

Even if plaintiff was not the aggressor in this case, the total absence of injury in the record could not support an Eighth Amendment claim sine the failure to stop a verbal argument does not arise to the level of an Eighth Amendment violation. See Wilson, *supra* (only the unnecessary and wanton infliction of pain implicates the Eighth Amendment); see also Keenan v. Hall, 43 F.3d 1083, 1092 (9th Cir. 1996) (verbal threats and harassment do not form the basis of an actionable Eighth Amendment claim). Because no reasonable factfinder could conclude that any defendant

---

[2] It is also noteworthy that plaintiff has neither alleged nor attested that he sought medical attention as a result of the three to five-minute beating he claims to have received, and there is no indication in the record that correctional officials found it necessary to provide any medical attention to either inmate.

14 - OPINION AND ORDER

deliberately disregarded a serious risk to plaintiff's safety, defendants are entitled to summary judgment on Claim Three.

## CONCLUSION

Defendants' Motion to Dismiss [58], Motion for Summary Judgment [75], and Motion to Submit In Camera Attachments [78] are GRANTED. Claims Two and Three in plaintiff's Amended Complaint [10] are DISMISSED, with prejudice. Claim One is DISMISSED, without prejudice to plaintiff's right to refile it once he has exhausted his administrative remedies.

Plaintiff's Motion for Default Judgment [72] is DENIED.

IT IS SO ORDERED.

DATED this   1   day of May, 2006.

                                           /s/Ancer L.Haggerty
                                              Ancer L. Haggerty
                                              United States District Judge